# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| TIMOTHY TIMMONS, | |
| Plaintiff, | CIVIL ACTION NO.: 6:16-cv-19 |
| v. | |
| HOMER BRYSON; WARDEN TATTUM; TOBBY, Deputy Warden of Security; BRANDON SELLERS; OFFICER SHOEMAKER; OFFICER REID; OFFICER SANDERS; CAPTAIN ANDERSON; OFFICER MCINTOSH; MEDICAL ADMINISTRATOR; MEDICAL PHYSICIAN; and ALL OF ROGERS STATE PRISON CORRECTIONAL FACILITY, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Smith State Prison in Glennville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement while he was housed at Rogers State Prison in Reidsville, Georgia. For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's monetary damages claims against Defendants in their official capacities and Plaintiff's claims against Defendants Bryson, Tattum, Tobby, Sanders, Anderson, Medical Administrator, Medical Physician, and all of Rogers State Prison Correctional Facility. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Reid without prejudice. The Court **DIRECTS** the United States Marshal to

serve Defendants Sellers, Shoemaker, McIntosh, and the Booth Control Officer[1] with a copy of Plaintiff's Complaint and this Order.

## BACKGROUND

Plaintiff, who is currently incarcerated at Smith State Prison, filed this cause of action contesting certain conditions of his confinement at Rogers State Prison. Specifically, Plaintiff states Defendant Shoemaker approached him on April 24, 2015, and asked Plaintiff what he had in his possession. (Doc. 1, p. 7.) Plaintiff states he tried to explain to Defendant Shoemaker he did not have anything on him, but, as Defendant Shoemaker starting coming closer to him, Plaintiff emptied his pockets to reveal a pen, lip balm, and a compact disc. Plaintiff contends Defendant Shoemaker began twisting his left arm "in an aggressive manner", pushed Plaintiff head first into a brick wall, and attempted to throw Plaintiff face first into the concrete floor. (Id.) Plaintiff asserts Defendant Sellers arrived and immediately began assisting in Defendant Shoemaker's assault. According to Plaintiff, he was not resisting the officers in any way. Plaintiff alleges Defendant Shoemaker cuffed his left wrist and pushed Plaintiff back into the brick wall, causing head injuries. Plaintiff also alleges Defendant Sellers started striking him several times in the face, head, and neck with his handcuffs. (Id. at p. 8.) In an effort to protect himself from these blows, Plaintiff asserts he snatched his right hand away but was unsuccessful because Defendant Shoemaker overpowered him and cuffed his right wrist. Plaintiff avers Defendant Shoemaker threw punches and elbowed him in his back and on his side. Plaintiff maintains he dropped to his knees, and Defendants Shoemaker and Sellers kicked, kneed, and stomped him repeatedly in his back, side, hips, legs, and kidney area. (Id.) Plaintiff asserts the

---

[1] The Clerk of Court is **DIRECTED** to add "Booth Control Officer" as a named Defendant upon the docket and record of this case. In addition, Plaintiff is **DIRECTED** to advise the Court of the identity of the Booth Control Officer within thirty (30) days of this Order. Plaintiff's failure to do so may result in the dismissal of Plaintiff's claims against this Defendant.

2

Booth Control Officer who was working with Defendant Sellers, whose name he does not know, witnessed this assault, as did several other inmates. (Id.)

Later that evening, Plaintiff contends he had cuts, bruises, and knots on his face and head, scrapes on his knees, and swelling in his back, left leg, and left foot and began experiencing a lot of pain. (Id. at p. 9.) Plaintiff also contends he received x-rays and a scan after he was transferred to Smith State Prison, and these tests revealed he had herniated discs, which caused pinched nerves, numbness in his limbs, and severe headaches. (Id. at p. 12.) Plaintiff asserts he was seen in the medical department at Rogers State Prison on or about May 2, 2015, and the physician told him he was only experiencing muscle spasms. Plaintiff contends he was given "basic pain relievers and muscle relaxers" after he complained about pain shooting up and down his legs and back.[2] (Id. at p. 10.)

On May 1, 2015, Plaintiff contends he and another inmate were taken before Defendant McIntosh for a hearing based on disciplinary charges they received as a result of the April 24, 2015, incident. Plaintiff asserts he asked that the hearing not proceed without witnesses being present or being able to read witness statements. Plaintiff alleges Defendant McIntosh informed him that there would be no witnesses or evidence presented. Plaintiff was found guilty of the charged violations, and he received 90 days' store, visitation, and phone restriction. (Id.)

Plaintiff asserts he wrote a grievance to Defendant Tattum on May 5, 2015, and informed him of the mistreatment he received at the hands of staff. (Id. at p. 11.) Plaintiff also asserts he was taken to the Tattnall County Jail the next day to be fingerprinted because he was charged with assaulting Defendant Sellers. Upon leaving the Jail, Plaintiff contends he tried to enter the transport van while he was in chains by stepping on a milk crate, which cracked and slipped from

---

[2] Plaintiff contends he was denied medical care from April 24 through May 1, 2015, yet he does not indicate any person who may be responsible for this denial. (Doc. 1, p. 10.)

3

under Plaintiff, causing Plaintiff to fall and the exacerbation of his previous injuries. (Id.) Plaintiff states he was crying and asked his transporters for some type of medical assistance, but Defendant Reid told him he was not going to call anyone. Plaintiff also states he begged and pleaded with Defendant Reid, who still refused to do anything and forced Plaintiff into the van. (Id.)

**STANDARD OF REVIEW**

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without

arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as

to excuse mistakes by those who proceed without counsel."). The requisite review of Plaintiff's Complaint raises several doctrines of law, which the Court discusses in turn.

## DISCUSSION

### I. Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. The Court should **DISMISS** these claims.

### II. Claims Against Defendants Bryson, Tattum, Tobby, and Medical Administrator

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[3] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional

---

[3] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

6

violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff attempts to hold: Defendant Bryson liable based solely on his position as the Commissioner of the Georgia Department of Corrections; Defendant Tattum liable based solely on his position as the Warden at Rogers State Prison; Defendant Tobby liable based solely on his position as the Deputy Warden of Care and Treatment; and Medical Administrator liable based solely on his position as the Medical Administrator. Plaintiff does not allege that Bryson, Tattum, Tobby, or Medical Administrator personally participated in the alleged constitutional violations. In fact, the only assertions Plaintiff makes against any of these Defendants is that he wrote Defendant Tattum a grievance eleven days after he allegedly was assaulted and four days after his disciplinary proceedings. This is an insufficient basis for liability under Section 1983. Allen v. Brown, No. CV 112-052, 2013 WL 1333175, at * 5 n.9 (S.D. Ga. Mar. 7, 2013) (noting that, even assuming a prisoner-plaintiff alleged the filing of a grievance with supervisory officials put the officials on notice of alleged constitutional violations, he still could not proceed against the supervisors on this basis because plaintiff did not state the supervisors personally participated in the violations or that there was a causal connection between the alleged violations and the supervisors' actions) (citing Asad v. Crosby, 158 F. App'x 166, 170–72 (11th Cir. 2005),

and Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, the Court should **DISMISS** Plaintiff's claims against Defendants Bryson, Tattum, Tobby, and Medical Administrator.

**III.     Claims Against Anderson and Sanders**

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. In addition, "[a] pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Though Plaintiff names Anderson and Sanders as Defendants in this case, he makes no mention of or factual allegations against these Defendants. Thus, Plaintiff has not met the basic pleading requirements as to Defendants Anderson and Sanders. Consequently, the Court should **DISMISS** Anderson and Sanders as named Defendants in this case.

**IV.     Claims Against All of Rogers State Prison Correctional Facility**

As stated above, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. While local governments qualify as "persons" under Section 1983, state agencies and penal institutions are generally not considered legal entities subject to suit. See Grech v. Clayton Cty. Ga., 335 F.3d 1326, 1343 (11th Cir. 2003). Consequently, a prison is not a viable defendant under

Section 1983. Williams v. Chatham Cty. Sherriff's Complex, Case No. 4:07-cv-68, 2007 WL 2345243 (S.D. Ga. Aug. 14, 2007) ("The county jail, however, has no independent legal identity and therefore is not an entity that is subject to suit under Section 1983."). Accordingly, the Court should **DISMISS** Plaintiff's claims against Defendant All of Rogers State Prison Correctional Facility.

## V. Deliberate Indifference Claims against Defendant Medical Physician

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

"To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1319–20 (11th Cir. 2005)). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010). In other words, "to find deliberate indifference on

the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010). "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991)). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Plaintiff fails to allege sufficient facts to state a claim that Defendant Medical Physician disregarded a medical need with conduct which is more than gross negligence. The most Plaintiff states is that Defendant Medical Physician examined him, only thought Plaintiff was suffering from muscle spasms (despite what later tests revealed), and gave him basic medications. In addition, Plaintiff states he was in pain and later learned that he had herniated discs; however, Plaintiff admits he was given medical treatment and pain medication while he was at Rogers State Prison.

The Supreme Court has emphasized that mere negligence in providing medical treatment or a difference of medical opinion does not give rise to an Eighth Amendment claim, and medical malpractice does not become a constitutional violation simply because the victim is incarcerated. Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Kelley v. Hicks, 400 F.3d 1282, 1285 (11th Cir. 2005) ("Mere negligence, however, is insufficient to establish deliberate indifference."); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (negligence in misdiagnosis of pituitary tumor not sufficient for Eighth Amendment claim); Moore v. McNeil, No. 09-22754-CIV, 2009 WL 7376782, at *5 (S.D. Fla. Dec. 7, 2009), *report and*

*recommendation adopted in part*, No. 09-22754-CIV, 2011 WL 304313 (S.D. Fla. Jan. 28, 2011) ("Treatment violates the Eighth Amendment only if it involves something more than a medical judgment call, an accident, or an inadvertent failure. It must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.") (internal punctuation omitted) (quoting Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980), and Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). The purpose of the subjective requirement of the deliberate indifference test is "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence <u>or the misdiagnosis of an ailment</u>." Rouster v. Cty. of Saginaw, 749 F.3d 437, 446–47 (6th Cir. 2014) (emphasis supplied) (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)); Payne v. Groh, No. CIV. 1:99CV83, 1999 WL 33320439, at *5 (W.D.N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.").

Plaintiff's allegations, even when accepted as true and construed in his favor, simply do not rise to the level of a constitutional violation. Consequently, the Court should **DISMISS** all of Plaintiff's deliberate indifference claims against Defendant Medical Physician.

**VI.    Claims Against Defendant Reid**

Plaintiff contends that Defendant Reid was deliberately indifferent to his serious medical needs after Plaintiff fell from the transport van on May 6, 2015, nearly two weeks after the events described involving Defendants Shoemaker and Sellers. Plaintiff cannot pursue unrelated claims in one Section 1983 Complaint. Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *4 (11th Cir. July 16, 2015) (upholding this Court's dismissal of unrelated claims pursuant to

Federal Rule of Civil Procedure 20(a), which will allow the joinder of claims if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action."). Other than the fact that his claims against Defendants Shoemaker and Sellers and his claims against Defendant Reid occurred while he was incarcerated at Rogers State Prison, Plaintiff's claims have no relation to one another. These claims involve entirely different facts and occurrences as well as legal standards. Accordingly, they cannot be pursued in the same action. Therefore, the Court should **DISMISS** Plaintiff's claims against Defendant Reid **WITHOUT PREJUDICE**. Should Plaintiff seek to pursue these claims, he must do so through a separate action.[4]

## VII. Claims Against Defendants Shoemaker and Sellers

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the

---

[4] The Court recognizes Plaintiff asserts he was being transported to Tattnall County Jail because he was being charged with assaulting Defendant Sellers, and it was during this transport he fell and reinjured himself. However, the passage of two weeks' time between these incidents prevents these claims from being related, as does the allegation that his fall caused him to reinjure himself. Fed. R. Civ. P. 20(a).

need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff has made sufficient allegations to state plausible claims that Defendants Shoemaker and Sellers used excessive force against him on the date of the incident. He alleges that Defendants Shoemaker and Sellers hit and kicked him and tried to ram his head into a brick wall for no reason. These claims survive frivolity review.

**VIII. Claims Against Booth Control Officer**

"[A]n officer can be liable for failing to intervene when another officer uses excessive force." Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]") (alterations in original) (citing Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998)). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Id.; see also Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (explaining that a direct failure to intervene claim "requir[es] the allegations to include facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct"). However, if there is no underlying use of excessive force, another officer has no obligation to intervene. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009).

Plaintiff contends the unnamed Booth Control Officer witnessed the alleged use of force by Defendants Shoemaker and Sellers. Though Plaintiff does not explicitly state this officer

13

failed to intervene on his behalf upon witnessing the excessive use of force, such a claim is implicit in Plaintiff's Complaint. This claim survives frivolity review, and the Clerk of Court is **DIRECTED** to add "Booth Control Officer" as a named Defendant. As noted above, Plaintiff shall have a period of thirty days to provide the Court with this officer's identity.

## IX. Claims Against Defendant McIntosh

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67). Plaintiff's assertion that he was not allowed to call witnesses or present documentary evidence during the disciplinary hearing proceedings states a plausible procedural due process claim. Thus, Plaintiff's claims against Defendant McIntosh survive frivolity review.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** all monetary damages claims against Defendants in their official capacities and all claims against

Defendants Bryson, Tattum, Tobby, Sanders, Anderson, Medical Administrator, Medical Physician, and all of Rogers State Prison Correctional Facility. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Reid without prejudice.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint arguably state colorable claims for relief under 42 U.S.C. § 1983 for excessive force against Defendants Shoemaker and Sellers, failure to intervene

against Defendant Booth Control Officer, and procedural due process against Defendant McIntosh. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon Defendants Shoemaker, Sellers, Booth Control Officer, and McIntosh by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

### **INSTRUCTIONS TO DEFENDANTS**

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the

Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA