# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

TIMOTHY TIMMONS,

    Plaintiff,

v.

BRANDON SELLERS; DERRICK SHUEMAKE; OTIS MCINTOSH; and BOOTH CONTROL OFFICER,

    Defendants.

CIVIL ACTION NO.: 6:16-cv-19

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff is currently incarcerated at Ware State Prison in Waycross, Georgia. He filed this cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement at Rogers State Prison in Reidsville, Georgia. After the requisite frivolity review, the United States Marshal served Plaintiff's Complaint on Defendants Brandon Sellers, Derrick Shuemake, and Otis McIntosh. (Docs. 12–16.)[1] Defendants then filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint. (Doc. 17.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint, **without prejudice**. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis* and **DIRECT** the Clerk of Court to **CLOSE** this case.

---

[1] The Clerk of Court is **DIRECTED** to update the docket of this case to reflect the proper names of these three Defendants listed in their Motion to Dismiss: Brandon Sellers, Derrick Shuemake, and Otis McIntosh. Defendant "Booth Control Officer" has not yet been identified and has not been served in this case. Thus, his name shall remain the same on the docket of this case. However, my recommended ground for dismissal, failure to exhaust administrative remedies, applies equally to claims asserted against this unidentified Defendant.

## BACKGROUND

Plaintiff, who is currently incarcerated at Smith State Prison, filed this cause of action contesting certain conditions of his confinement at Rogers State Prison. Specifically, Plaintiff states Defendant Shuemake approached him on April 24, 2015, and asked Plaintiff what he had in his possession. (Doc. 1, p. 7.) Plaintiff states he tried to explain to Defendant Shuemake he did not have anything on him, but, as Defendant Shuemake starting coming closer to him, Plaintiff emptied his pockets to reveal a pen, lip balm, and a compact disc. Plaintiff contends Defendant Shuemake began twisting his left arm "in an aggressive manner", pushed Plaintiff head first into a brick wall, and attempted to throw Plaintiff face first into the concrete floor. (Id.) Plaintiff asserts Defendant Sellers arrived and immediately began assisting in Defendant Shuemake's assault. According to Plaintiff, he was not resisting the officers in any way, but that the officers continued to assault him. Plaintiff asserts the Booth Control Officer who was working with Defendant Sellers, whose name he does not know, witnessed this assault, as did several other inmates. (Id.)

On May 1, 2015, Plaintiff contends he and another inmate were taken before Defendant McIntosh for a hearing based on disciplinary charges they received as a result of the April 24, 2015, incident. Plaintiff asserts he asked that the hearing not proceed without witnesses being present or being able to read witness statements. Plaintiff alleges Defendant McIntosh informed him that there would be no witnesses or evidence presented. Plaintiff was found guilty of the charged violations, and he received 90 days' store, visitation, and phone restriction. (Id.)

On March 29, 2016, I conducted a frivolity review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 7.) I recommended that the Court dismiss a number of Plaintiff's claims. Id. However, I concluded that Plaintiff stated plausible claims for relief under 42 U.S.C. § 1983

for excessive force against Defendants Shuemake and Sellers, failure to intervene against Defendant Booth Control Officer, and procedural due process against Defendant McIntosh. Id. Accordingly, the United States Marshal served these Defendants with Plaintiff's Complaint.

Following service, Defendants filed the instant Motion to Dismiss Plaintiff's Complaint. (Doc. 17.) In that Motion, Defendants argue that Plaintiff failed to properly pursue his due process and excessive force claims through the Georgia Department of Corrections' ("DOC") grievance system. Id. Thus, they contend, Plaintiff did not exhaust his administrative remedies before filing this lawsuit. Id. Defendants also claim that Plaintiff fails to state a claim a plausible due process violation and that qualified immunity shields Defendant McIntosh. Plaintiff filed a Response opposing Defendants' Motion. (Doc. 21.) In addition, Plaintiff filed an Affidavit which he titled "Response to Magistrate Judge's Report and Recommendation" but which addresses Defendants' arguments regarding exhaustion. (Doc. 22.)

## DISCUSSION

### I. Dismissal of Plaintiff's Claims for Failure to Exhaust his Available Administrative Remedies Before Filing Suit

#### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a

determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Turner, 541 F.3d at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of the plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**B.      Legal Requirements for Exhaustion**

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States

4

Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative

grievance process. Bryant, 530 F.3d at1378 ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended

to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

Nonetheless, the United States Supreme Court recently held that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

### C. Whether Plaintiff Exhausted his Administrative Remedies as to his Excessive Force Claims

#### 1. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 17-7.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." Id. Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 4.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (Id. at p. 2.) The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor. (Id. at pp. 7–8.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (Id. at p. 8.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at pp. 10–11.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

        2.        Whether Plaintiff Properly Exhausted GDOC's Administrative Remedies as to his Excessive Force Claims

In his Complaint, Plaintiff states that he filed a grievance regarding the April 24, 2015, use of force on May 5, 2015, while he was at Rogers State Prison before he was transferred to Smith State Prison on May 7, 2015. (Doc. 1, p. 3.) He contends that he received no response to the May 5, 2015, grievance while he was at Rogers State Prison or Smith State Prison. Id. Thus, he alleges, he filed another grievance, Grievance Number 208837, on November 16, 2015. Id. On January 21, 2016, he received a response to that grievance stating that he filed the grievance out of time and the grievance improperly raised more than one issue. (Id. at p. 4.) He states that, while Warden Tatum signed this response on December 2, 2015, Plaintiff did not receive it until January 21, 2016. Id. Plaintiff states that he then filed an appeal of that denial on January 25, 2016. Id. He goes on to explain that Ms. Washington, apparently a prison employee, required him to provide his copy of his November 16, 2015, grievance as well as Warden Tatum's response. Id.

8

In his Affidavit following Defendants' Motion, Plaintiff states that he did not receive a grievance form to fill out until May 1, 2015. (Doc. 22, p. 2.)[2] He contends that he was not able to turn the grievance in until May 5, 2015, "because the floor officers, *et al.*, stated that they couldn't take it." Id. He says that no one "made themselves available" to accept the grievance until May 5, 2015. Id. Plaintiff further maintains that his grievance was dated May 3, 2015, and that he was ready to turn it in on May 4, 2015. Id.

Even under the first Turner step, Plaintiff's account of his May 5, 2015, grievance reveals that he did not properly exhaust. Plaintiff had ten calendar days from the date of the incident on April 24, 2015, to file an initial grievance. (Doc. 17-7, p. 8.) Thus, his deadline for filing the grievance was May 4, 2015. Under Plaintiff's version of events, he did not file the grievance until a day later.[3] Thus, he failed to properly grieve his claims. Again, an inmate must comply with the institution's procedural rules in order to effectuate proper exhaustion. Jones, 549 U.S. at 218; Woodford, 541 U.S. at 90–92; Singleton v. Johnson, No. CV406-75, 2008 WL 3887633, at *1 (S.D. Ga. Aug. 18, 2008) (dismissing inmate's case for failure to properly exhaust where appeal of grievance denial was filed one day after SOP's deadline).

Moreover, even if Plaintiff's May 5, 2015, grievance was timely, Plaintiff failed to pursue all available steps regarding that grievance. If Plaintiff filed this grievance on May 5, 2015, as Plaintiff alleges, the Warden had forty days to respond to that grievance. (Doc. 21-3, pp. 10–11.) When the Warden failed to respond, Plaintiff could not simply rely upon that lack of response to constitute exhaustion. Rather, Plaintiff still had to complete each step of the

---

[2] Plaintiff also baldly states that a "properly formulated section 1983 suit does not require a claimat [sic] to exhaust available state judicial or administrative remedies before seeking judicial relief." (Doc. 22, p. 1.) As explained above, Plaintiff is mistaken. See 42 U.S.C. § 1997e(a); Porter, 534 U.S. at 523.

[3] Of course, Plaintiff's Grievance Number 208837, filed on November 16, 2015, could not constitute proper exhaustion, as it was untimely by more than six months. Hence, Plaintiff attempts to establish that he filed a grievance in May of 2015.

9

grievance process. Bryant, 530 F.3d at1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson, 418 F.3d at 1157, and Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies). Thus, if the Warden failed to respond within forty days of Plaintiff filing the grievance, Plaintiff's next step would be to file an appeal with the Commissioner's Office within seven days. (Doc. 17-7, p. 12.) However, Plaintiff does not allege that he ever filed an appeal.

Even if Plaintiff's attempt to rely upon a grievance allegedly filed on May 5, 2015, survives the first Turner step, that attempt readily withers when subjected to the crucible of examination required by the second Turner step. Defendants offer more credible information indicating that Plaintiff never filed a grievance in May of 2015. Specifically, Defendants offer the affidavit of Tammy Stankowitz, the Grievance Coordinator at Rogers State Prison. (Doc. 17-6.) Stankowitz explains that the prison keeps records of every grievance filed by an inmate, and those records do not reflect that Plaintiff filed a grievance in May of 2015 regarding the April 24, 2015, use of force. (Id. at pp. 7–8.) According to Stankowitz, the only grievance that Plaintiff filed regarding the April 24, 2015, incident was Grievance Number 208837, which Plaintiff filed on November 16, 2015, while he was housed at Smith State Prison. Id. That grievance was rejected because it was untimely and raised more than one issue. Id. Stankowitz attached to her affidavit GDOC records summarizing Plaintiff's grievance history. (Doc. 17-9.) That document confirms that Plaintiff did not file any grievance regarding the April 24, 2015, incident until November 16, 2015. Id. Furthermore, Stankowitz also attached documents relating to Plaintiff's grievance of the incident. (Doc. 17-11.) These documents confirm that Plaintiff did not grieve

the incident until filing Grievance Number 208837. Id. Furthermore, GDOC officials rejected Plaintiff's grievance as untimely at every level of the grievance process. Id. All of the documents provided by Defendants contain no indication that Plaintiff filed a grievance in May of 2015 other than Plaintiff's unsubstantiated statement to that effect. Given the consistency behind these records and Stankowitz's statements and the complete absence of any record (from Plaintiff or Defendants) to support Plaintiff's claims that he filed a grievance in May of 2015, the Court should reject Plaintiff's claims that he filed a grievance in May of 2015.

In short, even under Plaintiff's version of events and accepting that he filed an initial grievance on May 5, 2015, he failed to properly exhaust his administrative remedies through that grievance. Moreover, Defendants have presented far more credible facts revealing that Plaintiff did not file a grievance on May 5, 2015. Consequently, Plaintiff did not properly exhaust GDOC's administrative remedies regarding his excessive force claims before filing this lawsuit.

3. Whether GDOC's Administrative Remedies Were Available to Plaintiff

Having found that Plaintiff failed to exhaust GDOC's administrative remedies, the Court must assess whether those remedies were available to Plaintiff. Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___ 2016 WL 3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials

11

with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id. at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id. at *7.

Though his Response to the Motion to Dismiss is unclear, Plaintiff arguably contends that the administrative remedies officially on the books at Rogers State Prison were not made available to him. Plaintiff states that he could not file his grievance by May 4, 2015, because he could not get a grievance form until May 1, 2015, and no one was available to accept his grievance until May 5, 2015. (Doc. 22, p. 2.) However, under the SOP, Plaintiff could have requested to file his grievance out of time. Moreover, as explained above, after the time for the Warden to respond to the alleged May 5, 2015, expired, Plaintiff had the ability to file an appeal to the Central Office, but he never did so. Plaintiff does not make any argument of unavailability as to the appeal process.

Even accepting all of Plaintiff's allegations as true, he fails to establish that the administrative remedies at Smith State Prison and Rogers State Prison were not capable of use. An inmate must comply with the institution's procedural rules in order to effectuate proper exhaustion. Jones, 549 U.S. at 218; Woodford, 541 U.S. at 90–92. Plaintiff cannot argue, after the fact, that, if he had requested leave to file his grievance out of time or appealed to the Central Office, those efforts would have been rejected. Higginbottom v. Carter, 223 F.3d 1259, 1261

(11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile."). It is not this Court's place to second guess a prison's grievance rules, and an inmate cannot create unavailability by failing to abide by those rules.

In sum, under the first Turner step, Plaintiff does not establish that Smith State Prison or Rogers State Prison officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GDOC's grievance process was so complicated that it was "essentially unknowable," or that GDOC officers "thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, ___ U.S. ___, 2016 WL 3128839, at *8. Thus, even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court contemplated in Ross.

Plaintiff's claims of unavailability fail even more easily under the second Turner step. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d 1083. Having reviewed all of Plaintiff's and Defendants' filings, the Court finds Grievance Coordinator Stankowitz's account of availability more credible than Plaintiff's. Stankowitz states that, upon admission to GDOC, prison officials provide an orientation to inmates on the grievance process, and the process is outlined in the inmates' Orientation Handbook. (Doc. 17-6, p. 3.) Additionally, inmates may review SOP IIB05-0001in the prison's library. Contrary to Plaintiff's assertions, Stankowitz avers that grievance forms are available in all living units in the prison and in the counselors' office during business hours. (Id. at p. 4.) Prison staff provides grievance forms to inmates in isolation upon their request. Id. Additionally, while Plaintiff complains that no officers "made themselves available" to take his

grievance, he was not required to wait on a specific person to receive his grievance. Rather, SOP IIB05-0001 explicitly provides that Plaintiff could "give it to any counselor." (Doc. 17-7, p. 8.) Moreover, Stankowitz states that, after a counselor receives a grievance from a prisoner, the counselor must forward the form to the Grievance Coordinator. (Doc. 17-6, p. 5.)

Stankowitz's account of availability is consistent with the record evidence, including the prison's Standard Operating Procedures. In contrast, Plaintiff's contention that the grievance system is unavailable is not substantiated by any evidence. Additionally, though Plaintiff's Complaint detailed at length his attempt to grieve his claims, he never mentioned any difficulty with getting a grievance form or finding someone to accept that form at Smith State Prison until after Defendants' Motion to Dismiss was filed. (See Doc. 1, pp. 3–4.) Moreover, Plaintiff's grievance filing history demonstrates that he was able to file a grievance and appeals when he chose to do so. (Doc. 17-9.) Accordingly, the Court should find that the GDOC's grievance process was available for Plaintiff to grieve Defendants' use of force against him. See Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure.")

For all of these reasons, Plaintiff did not properly exhaust his available administrative remedies regarding his excessive force claims. Consequently, the Court should **GRANT** this portion of Defendants' Motion.

**D.     Whether Plaintiff Exhausted his Administrative Remedies as to his Due Process Claims**

In addition to his excessive force claims, Plaintiff asserts claims arising out of the May 1, 2015, disciplinary hearing regarding the April 24, 2015, incident and resulting punishment he received at the hearing. The Court sanctioned these claims as plausible due process claims. Defendants now argue that Plaintiff failed to exhaust his administrative remedies as to these claims. In support of this argument, Defendants do not contend that Plaintiff should have used SOP IIB05-0001 to grieve his claims.[4] Rather, Defendants point to SOP IIB02-001, which sets forth the guidelines and procedures for the GDOC's disciplinary proceedings.[5]

1. SOP IIB02-001's Disciplinary Hearing Procedures

SOP IIB02-001 provides inmates who are charged with infractions of GDOC rules have a right to a disciplinary hearing and certain procedural rights and safeguards. (Docs. 17-3; 17-4.) At a disciplinary hearing, a disciplinary hearing officer presides over the proceedings and makes a determination as to whether the inmate is guilty of the charged offenses or a lesser included offense. (Docs. 17-3, pp. 17–24; Doc. 17-4, pp. 18–25.) At the conclusion of the disciplinary hearing, the disciplinary hearing officer must announce his decision and recommend the appropriate sanction. (Doc. 17-3, pp. 23–24; Doc. 17-4, pp. 24–25.) After the hearing, the disciplinary hearing officer must inform the inmate that he or she has a right to appeal the findings, and the fact that notice was given to the inmate of his right to appeal must be noted on

---

[4] SOP IIB05-0001 specifically provides that an inmate may not use the SOP to file a grievance regarding disciplinary actions.

[5] Defendants filed the version of SOP IIB02-001 that was in effect from September 16, 2009, to April 29, 2015, at Docket Number 17-3. The version in effect from April 30, 2015, to the present is filed at Docket Number 17-4. Plaintiff's disciplinary issue arose on May 24, 2015, before the change in the relevant SOP, but his hearing took place on May 1, 2015, after the revisions. Defendants do not explain which version of the SOP would have applied to Plaintiff's disciplinary hearing. However, the Court need not resolve this issue, as Plaintiff had a right to appeal under either version of the SOP.

the disciplinary report. Id. The disciplinary hearing officer must also provide the inmate with a disciplinary appeal form, (attachment 7 to SOP IIB02-0001), to the inmate at the conclusion of the disciplinary hearing. (Doc. 17-3, p. 26; Doc. 17-4, p. 25.)

If an inmate seeks to appeal the decision of the disciplinary hearing officer, he must file a disciplinary appeal form in which he lists his grounds for appeal within the time allowed by policy (15 days of the date of adjudication by the disciplinary hearing officer under the prior policy; 5 business days of the date of adjudication by the disciplinary hearing officer under the revised policy). (Doc. 17-3, p. 27; Doc. 17-4, pp. 25–27.) The Warden or the Warden's designee shall make the first appellate decision regarding the inmate's appeal. (Doc. 17-3, pp. 26–27; Doc. 17-4, pp. 26–27.) If the inmate is unsatisfied with the first appeal decision, the inmate may then file a second appeal by mailing the appeal to the Inmate Affairs Unit within the time allowed by policy (15 days from the date of the first appellate decision under the earlier version of the SOP; 5 business days of the date of the first appellate decision under the revised version of the SOP). (Doc. 17-3, pp. 27–28; Doc. 17-4, pp. 27–28.)

> 2. Plaintiff's Disciplinary Hearing Procedures and Whether he Exhausted his Remedies

In line with these procedures, on April 24, 2015, Plaintiff received Disciplinary Report Number 555580. (Doc. 17-5.) This Report charged Plaintiff with assault on an officer with injury, failure to follow instructions, and obstructing the duty of staff. (Id. at pp. 1, 7.) The Report alleged that Plaintiff punched Defendant Shuemake in the torso. Id. Disciplinary Report 555580 and the charges were served on Plaintiff on April 25, 2015. (Id. at p. 1.) On April 30, 2015, Rogers State Prison Correctional Officer Collins completed the Investigative Report. (Id. at p. 3.) On May 1, 2015, Rogers State Prison Lieutenant Otis McIntosh served as the Disciplinary Hearing Officer and conducted a hearing on Disciplinary Report Number 555580.

(Id. at pp. 1–2, 14.) At the conclusion of the disciplinary hearing, Lieutenant McIntosh found Plaintiff guilty of the charges and recommended 90 days of telephone restriction, 90 days of store restriction, 90 days of visitation restriction, and concurrent time in the Tier program. Id. The records of Plaintiff's disciplinary hearing indicate that Plaintiff had an advocate at the hearing and that Plaintiff was advised of his right to appeal the DHO's recommended punishment. (Id. at pp. 1–2, 4.)

Defendants argue that, despite the fact that Plaintiff was notified of his right to appeal, he never filed an appeal under SOP IIB02-001. In support of this contention, Defendants offer the affidavit of Hilary McCall, the Administrative Assistant at Rogers State Prison. (Doc. 17-2.) McCall explains the appeal process within SOP IIB02-001 and the events of Plaintiff's disciplinary hearing. Id. She states that she has been the Warden's Designee for receiving and processing first level disciplinary hearing appeals since January 16, 2013. (Id. at p. 5.) McCall testifies that inmates may access SOP IIB02-001, as it is located in the library of all GDOC facilities. (Id. at p. 2.) She further avers that Plaintiff was notified of his right to appeal the disciplinary hearing officer's decision, including any contention that the officer did not permit Plaintiff to call witnesses or introduce evidence, at the hearing. Id. However, despite this advice of rights, McCall states that Plaintiff never filed an appeal.

Plaintiff has never indicated that he filed an appeal of his disciplinary hearing. Though his Complaint laid out facts leading up to the hearing, during the hearing, and after the hearing, he never mentioned that he appealed the hearing officer's decision. Moreover, in his Response to Defendants' Motion to Dismiss, Plaintiff does not address Defendants' argument that he failed to exhaust the remedies available under SOP IIB02-001. While Plaintiff states that he attempted to file a grievance, he does not make any mention that he attempted to appeal the hearing

17

officer's decision. Thus, under the first Turner step, even under Plaintiff's version of the facts, he did not exhaust the remedies available to him under SOP IIB02-001.

Moreover, even if the Court were to construe Plaintiff's allegations that he had difficulty filing a grievance as also pertaining to an appeal under SOP IIB02-001, that argument would fail under the second Turner step. As laid out above, Defendants have offered credible evidence that the procedures of SOP IIB02-001 were available to Plaintiff, but he failed to exhaust them. Defendants presented documentation, including an advice of rights form signed by Plaintiff, demonstrating that he was advised of his right to appeal the hearing officer's decision, but he failed to do so. (Doc. 17-5, p. 4.)

For all of these reasons, Plaintiff did not exhaust his available administrative remedies regarding his due process claims, and the Court should **GRANT** this portion of Defendants' Motion to Dismiss.

In sum, Plaintiff filed this lawsuit without properly submitting his claims against Defendants to the prison's grievance system. An inmate must do more to resolve his dispute within the literal walls of the prison or at least the figurative walls of the prison system before seeking relief in the halls of the courthouse. Thus, the Court should **DISMISS** Plaintiff's Complaint for failure to exhaust his administrative remedies. In light of this ground for dismissal, the Court need not address the remaining portions of Defendants' Motion.

### III. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[6] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to

---

[6] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

18

proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response thereto, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 17), **DISMISS** Plaintiff's Complaint, **without prejudice**, based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 20th day of September, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA